ACCEPTED
04-14-00275-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/2/2015 4:16:34 PM
KEITH HOTTLE
CLERK

## NO. 04-14-00275-CV

## IN THE COURT OF APPEALS
## FOR THE FOURTH JUDICIAL DISTRICT
## SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

07/2/2015 4:16:34 PM

KEITH E. HOTTLE
Clerk

### ADRIANA P. PEREZ
*Appellant*

### VS.

### WEBB COUNTY
*Appellee*

## ON APPEAL FROM CAUSE NO. 2011CVT000305 D2 IN THE
## 111TH JUDICIAL DISTRICT COURT OF WEBB COUNTY, TEXAS

## APPELLEE'S MOTION FOR REHEARING AND MOTION FOR EN BANC RECONSIDERATION

**MARCO A. MONTEMAYOR**
State Bar No. 24025983
WEBB COUNTY ATTORNEY
Email: marcmontemayor@webbcountytx.gov
**MOLLY HIGGINS SANTOS**
State Bar No. 09599100
ASSISTANT COUNTY ATTORNEY
Attorney in Charge
1110 Washington St., Suite 301
Laredo, Texas 78040
Telephone:  (956) 523-4044
Facsimile:  (956) 523-5005
Email: mhiggins@webbcountytx.gov

**ATTORNEYS FOR APPELLEE,**
**WEBB COUNTY**

**ORAL ARGUMENT REQUESTED**

1

## ARGUMENT FOR EN BANC SUBMISSION

Appellee, WEBB COUNTY, hereby files this Motion for Rehearing and Motion for En Banc Submission under Texas Rule of Appellate Procedure 49.1 and 49.7  *See* Tex. R. App. 41.2  allowing for the filing of a motion for enbanc submission to secure or maintain uniformity of the court's decisions and under extraordinary circumstances.

## I.

## INTRODUCTION

This appeal arises from a lawsuit filed by Adriana Perez against Webb County.  Adriana Perez sued Webb County for injuries she allegedly sustained when the vehicle she was driving was struck by a marked patrol car driven by Corporal Horacio Yzaguirre of the Webb County Sheriff's Department when he proceeded through a red light. Webb County filed a Plea to the Jurisdiction and alleged that at the time of the collision, Corporal Yzaguirre was operating an emergency vehicle and ***responding to an emergency call*** or ***reacting to an emergency situation*** and did not act with conscious indifference or reckless disregard, therefore the emergency exception to the waiver of immunity applies, depriving the trial court of subject matter jurisdiction, pursuant to Tex. Civ. Prac. & Rem. Code  §101.055(2). After a hearing, the trial court ruled in favor of Webb County, granting the Plea to the Jurisdiction.

On appeal, this Court (through a panel comprised of Chief Justice Sandee Bryan Marion, Justice Luz Chapa and Justice Marialyn Barnard) issued Dissenting, Lead and Concurring opinions, thereby ruling against Webb County. *App. A, B & C.* The Dissenting Opinion authored by Chief Justice Marion, issued on June 3, 2015, affirmed the Plea to the Jurisdiction granted in favor of Webb County; however, the Lead and Concurring Opinion reversed and remanded this case back to the trial court for further proceedings.  The Lead and Concurring Opinions conflict

2

with Texas Supreme Court law and earlier opinions of this Court and ignore legislative intent, and therefore warrant a motion for rehearing and motion for enbanc submission to secure or maintain uniformity of their opinions. Extraordinary circumstances involving public policy considerations also warrant en banc review of this case.

Should the decision for en banc submission result in a vote against hearing this case enbanc, then, due to public policy considerations, Appellee encourages any member of the Court to file a dissent, regardless of whether the judge was on the original panel deciding the case. *See O'Connor v. First Court of Appeals*, 837 S.W. 2d 94, 96 (Tex. 1992).

## II.

## THIS COURT'S LEAD OPINION FAILS TO HONOR THE PLEA TO A JURISDICTION STANDARD OF REVIEW

This appeal is based on the testimony of one witness and raises two (2) issues: Did Corporal Yzaguirre of the Webb County Sheriff's Department react to an emergency and in doing so, did he act with conscious indifference?

What is an emergency? The Texas Tort Claims Act does not define emergency. Courts cannot agree on the definition and even *this* Court cannot agree. Justice Chapa admits that Corporal Yzaguirre was reacting to an emergency call or responding to an emergency situation (albeit her language is subtle: "I write only on the issue of whether Perez raised a fact issue on whether Yzaguirre's actions were taken with conscious indifference or reckless disregard for the safety of others). *App. B.* Unlike Justice Chapa and Chief Justice Marion, Justice Barnard found a fact issue on the applicability of the emergency exception. *App. C.* Since the statute does not define emergency and the courts can't agree on it, what is a well intended police officer confronted with an emergency to do?

3

This appeal reviewed a Plea to a Jurisdiction Order. The Supreme Court of Texas established and has held true to the same standard of review. When the governmental unit raises the emergency exception, the Plaintiff must raise a disputed *material* fact issue regarding the jurisdictional issue. *City of San Antonio v. Riley,* 2009 WL 2045231, at *1(Tex. Civ. App. – San Antonio, 2009 no pet.)(citing *City of Helotes v. Miller,* 243 S.W. 3d 704, 707 (Tex. App. – San Antonio 2007, no pet.) (citing *Tex. Dept. of Parks and Wildlife v. Miranda,* 133 S.W. 3d 217, 226 (Tex. 2004)). Adriana Perez has the burden of proof to establish that the emergency exception does not apply. *See Tex. Dep't of Pub. Safety v. Little,* 259 S.W. 3d 236, 238-39 (Tex. App. Houston [14 Dist.] 2008, no pet.). Under this exception, Adriana Perez was required to present evidence of one of the following:

1.      Corporal Yzaguirre was not responding to an emergency call or reacting to an emergency situation;
2.      Corporal Yzaguirre's actions were not in compliance with the laws and ordinances applicable to emergency action or
3.      Corporal Yzaguirre's actions show that he did not care what happened to motorists. *City of San Antonio v. Hartman,* 201 S.W. 3d 667, 672 n. 19 (Tex. 2006).

The Lead Opinion, in concluding that Adriana Perez raised a fact issue on conscious indifference, relies solely on one case: *Tex. Dep't of Pub. Safety v. Bonilla,* No. 08-13-00117-CV, 2014 WL 2451176, at 6(Tex. App.- El Paso May 30, 2014, pet. filed). *Bonilla* is distinguishable based on the facts and evidence. It is factually distinguishable because the conduct of the DPS trooper in *Bonilla* was different than the conduct of Corporal Yzaguirre: Trooper Cruz did not activate his patrol vehicle's siren, unlike Corporal Yzaguirre, who activated his air horn three to four times prior to entering the intersection and Trooper Cruz admitted to being distracted by turning on his in car video camera, *Id* at 1. Unlike the evidence at the case at bar, in *Bonilla,* there was conflicting evidence which raised a fact issue on conscious

4

indifference.[1]

The Lead Opinion's misplaced reliance on *Bonilla* erroneously concluded that the Court found a fact issue on the **conduct** of Trooper Cruz who entered a blind intersection and did not remove his foot from his vehicle's accelerator pedal until .5 seconds before impact. *Id* at 9. But the *Bonilla* Court found a fact issue on the **conflicting testimony** of **multiple** witnesses mentioned in the footnote below. *See Bonilla* at 6. This is unlike the case at bar where Corporal Yzaguirre was the sole witness and his testimony was uncontroverted. Justice Chapa urges that Adriana Perez raised a fact issue on conscious indifference because Corporal Yzaguirre entered a **blind** intersection but that evidence rises only to the level of negligence, not conscious indifference. Conscious indifference and reckless disregard "require proof that a party knew the relevant facts but did not care about the result." *Hartman* 201 S.W. 3d at 672 n.19. Conscious indifference means Corporal Yzaguirre can only be held liable for what he **knew** not what he **should have known**. The Lead Opinion seeks to hold Corporal Yzaguirre liable for what he **should have known** not for what he **actually knew**. The evidence established that prior to entering the intersection, Corporal Yzaguirre did look but he didn't see Adriana Perez. 2RR/23. The fact that he looked indicates that he cared. Justice Chapa did not honor the governing standard of review because Adriana Perez presented no controverting evidence showing that Corporal Yzaguirre knew or should have known that proceeding through the intersection of Chihuahua and Bartlett in Laredo, Texas would cause a high degree of risk of serious injury to Adriana Perez because Corporal Yzaguirre did not see her. Contrast the opinion in *Bonilla* with

---

[1] The Court held the following conflicting evidence created a fact issue:
1. Trooper Cruz' affidavit and deposition testimony established he yielded at the intersection stop line;
2. Department of Public Safety asserted that Trooper Cruz' testimony established his view was not obstructed at the intersection (unlike the case at bar when Deputy Yzaguirre admitted he had a blind spot);
3. The Department of Public Safety reconstruction team concluded that the evidence gathered in the investigation conflicted with Cruz' report of yielding at the stop line;
4. The Department of Public Safety Interoffice Memorandum of Corporal Santos Carrasco opined that Trooper Cruz travelled at an unsafe speed approaching a red light at an intersection.

5

a prior opinion of this Court, involving another intersectional accident and similar facts as the case at bar. The Panel, including Justice Barnard, held the evidence did *not* raise a material fact issue on conscious indifference:

> "Officer Cortinas testified he... applied his brakes at the intersection immediately preceding the accident site, he removed his foot from the brake less than one second before the accident, he did not see the white minivan and could not remember if he looked both ways but that 'I always do, every time I approach an intersection."

*City of Laredo v. Varela,* 2011 WL 1852439, No. 2-3(Tex. App.-San Antonio May 11, 2011, pet. denied). In *Varela, Id.,* this Court properly honored the applicable standard of review promulgated by the Texas Supreme Court in *City of Amarillo v. Martin,* 971 S.W.2d 426, 434(Tex. 1998)(holding that waiver of immunity does not apply, inter alia, "if the action is not taken with conscious indifference or reckless disregard for the safety of others"). The vary term "conscious" suggests a mental state or attitude involving a deliberate choice. Corporal Yzaguirre took precautions, which were ineffective. He did not exhibit conscious indifference amounting to a deliberate choice.

Since Justice Chapa's analysis of the reasoning relied upon in *Bonilla,* concluding the evidence raised a fact issue is erroneous, the Justice's result that Adriana Perez raised a fact issue on conscious indifference is likewise erroneous. Contrast *Bonilla* with a case involving similar facts: *City of Pasadena v. Kuhn,* 260 S.W. 3d 93, 100 (Tex. App. – Houston [1st Dist.] 208, no pet.) (where entering a blind intersection did *not* create a material fact issue in light of the undisputed testimony that the officer had on his emergency lights and siren and that he slowed before entering the intersection). "The Court explained: Any intersection that an officer attempts to traverse when responding to an emergency is potentially a 'blind intersection'. That is why the statute provides that an emergency vehicle may proceed through a stop light after

6

slowing as necessary. *See* Tex. Transp. Code Ann. §546.001 (2)." *Id* at 100. In sum, even if all of Adriana Perez' contentions were taken as true by the trial court, her evidence raises, at most, only a question on whether Corporal Yzaguirre's actions were negligent; her evidence does not rise to the level of conscious indifference. *See Martin*, 971 S.W. 2d at 434 (requiring a Plaintiff to show that the operator acted with conscious indifference in order to recover damages resulting from the emergency operation of an emergency vehicle). *See also Riley*, 2009 WL 204 5231 at *2 (holding that even if all of the contentions of a third party witness were taken as true by the trial court, his affidavit raises, at most, only a question on whether the officer's actions were negligent; the affidavit does not assert any facts that rise to the level of reckless disregard) (citing *City of Amarillo v. Martin*, 971 S.W. 2d 426, 430 (Tex. 1998). *See also Smith v. Janda*, 126 S.W. 3d 543, 545-46(Tex. App. – San Antonio 2003, no pet)(holding evidence insufficient to establish recklessness when ambulance driven to emergency with lights and sirens activated as it approached intersection and ambulance driver slowed down and looked around and then proceeded into intersection without coming to a complete stop).

Finally, the best evidence is the dash cam video. The dash cam video shows the precautions Corporal Yzaguirre took before entering the intersection of Chihuahua and Bartlett and conclusively establish that he did not act with conscious indifference.

## III.

### THE COURT'S CONCURRING OPINION  FAILS TO HONOR THE PLEA TO A JURISDICTION STANDARD OF REVIEW

The Concurring Opinion concludes that the emergency exception to the waiver of immunity does not apply when a law enforcement officer responds to a Domestic Violence call. In doing so, Justice Barnard ignores legislative intent, departs from Texas Supreme Court law and *enlarges* the government's liability when the emergency exception to the waiver of liability

7

was designed to **narrow** the government's liability. *See City of College Station v. Kahlden* 2014 WL 1269026, at *10 (Tex. App.- Waco 2104, rehearing overruled) (holding an officer who stopped to retrieve boots in the road faced an emergency situation). The Court opined: "The statute is designed to limit the government's liability when it is reacting to an emergency situation, which necessarily includes prioritizing some risks over others. *Id* at 10, citing *Hartman* at 673. Justice Barnard does not address whether Corporal Yzaguirre was reacting to an emergency situation, but only that the emergency exception may not apply to a Domestic Violence call. If Domestic Violence is not an emergency situation what is? The terms contains the word violence. The very nature of the term indicates a dangerous situation triggering an immediate response, which is the key focus when analyzing the applicability of the emergency exception. *See City of Houston v. Davis,* WL 1678907(Tex.App.-Houston [1st Dist.] 2014, rev.denied) (holding emergency exception to waiver of immunity applied where officer was responding to emergency situation when officer pulled over car in response to a report that the driver of the car had tried to run another vehicle off the road: this was an emergency situation because it was a dangerous situation requiring immediate action. *Id* at 5, citing *Jefferson Cnty. V. Hudson,* No. 09-11-00168-CV 2011 WL 3925724 at *3 (Tex. App. – Beaumont Aug. 25, 2011, no pet.) (mem. op.).

The Concurring Opinion, authored by Justice Barnard, addressed only the first prong of the emergency exception, ***responding to an emergency call*** and not the second prong, ***reacting to an emergency situation***. Justice Barnard considered three (3) factors in deciding that Adriana Perez raised a material fact issue regarding the applicability of the emergency exception:

1. Webb County Sheriff's Department Policies' omission of Domestic Violence as an emergency call and requirement of use of lights and sirens for a code 3 call;

8

2. Corporal Yzaguirre was not dispatched to the scene and

3. The emergency equipment Corporal Yzaguirre used in reacting to the emergency.

I.  **Departmental Policy is Not a Controlling Factor**.

Justice Barnard opined that Webb County Departmental Policies were relevant in raising a fact issue because it did not specifically list Domestic Violence as an emergency call. Departmental Policies do not establish the law, only the applicable statute does because not all departmental policies define all emergency situations. How could they? *See Durham v. Bowie County*, 135 S.W. 3d 294, 301 (Tex. App. – Texarkana, 2004 rev. denied). The Court interpreted the language in section 101.055(2), and held that immunity is not waived for claims arising "from the action of an employee while... reacting to an emergency situation if the *action* is in compliance with the laws and ordinances applicable to emergency action." Tex. Civ. Prac. & Rem. Code Ann. §101.05(2). The Court reasoned:

> "We believe that language was used to allow the Legislature room to regulate specific emergency responses by governmental entities, such as driving an emergency vehicle in traffic or responding to an emergency law enforcement situation. In other words, if a law or ordinance specifics how any particular emergency response is to be made, the law or ordinance must be complied with. We do not believe section 101.055(2) was intended to refer to a general law, such as the Manual that might touch on emergency situations." *Id* at 301.

Interestingly, in *Varela*, (whose facts are similar to the case at bar) the Plaintiff argued that the officer's failure to comply with police department policy created a fact issue; however this Court's opinion (of which the panel included Justice Barnard) emphasized "department policy is not evidence relevant to whether Officer Cortinas was consciously indifferent to the safety of others because Officer Cortinas *testified* he had been taught to slow down to whatever speed is necessary to see the intersection is clear of traffic." *Id* at 4. Similarly, the Webb County Sheriff's Department Policies do not raise a fact issue regarding whether Corporal Yzaguirre was responding to an emergency call or reacting to an emergency situation in light of Corporal

9

Yzaguirre's testimony that he was reacting to "a domestic call in progress," and he explained, without contradiction, that these calls are considered an emergency or high priority "due to the fact of the nature of the violence of the call." [2] 2RR/20-22; 94. Although the fact issues are different- emergency v. conscious indifference, it's a distinction without a difference in light of Justice Barnard's analysis that a violation of department policy did not create a fact issue when considered with officer testimony. In *Varela*, the panel opinion considered officer testimony dispositive and written policies irrelevant, thereby negating the existence of a fact issue, but held the exact opposite in the case at bar. The Concurring Opinion contradicts a prior opinion, necessitating a motion for rehearing and en banc review.

Justice Barnard's underlying analysis in finding a fact issue, faulted Corporal Yzaguirre for making certain assumptions, i.e. that a weapon was involved, *See App.* C, pg. 7 (which is characterized as an emergency in Webb County Sheriff's Departmental Policies) but the key focus in determining whether Corporal Yzaguirre was reacting to an emergency is not the *policy* but the *information* Corporal Yzaguirre was reacting to, i.e. the tone of the communications on his radio transmission, indicating the situation was urgent, escalating and the need to get to the scene quickly. 2RR/93. *See Little*, 259 S.W. 3d at 239 (where officer did not learn that emergency situation did not exist until later, but was responding to mis-coded emergency call, no fact issue was raised regarding whether emergency exception applied).

## II.     Dispatch is Not a Material Factor.

Law enforcement officers rely on their discretion. They must do so because the very nature of their job requires them to respond to rapidly changing situations. Corporal Yzaguirre

---

[2] *See also City of San Antonio v. Rosenbaum*, 2011 WL 6739583, at \*3 where this Court found that Rosenbaum did not create a fact issue because officer's testimony was not conflicting since his general testimony provided no details about timing. With regards to activating the lights and siren, the general testimony did not conflict with his testimony providing the specific details regarding that timing. Citing *Clifton v. Hopkins*, 107 S.W. 3d 755, 759(Tex. App.-Waco 2003, no. pet)(general statements that provided no details on how and when promises were allegedly made and broken did not conflict with testimony that specifically referred to how and when the promises were allegedly made and broken); *See also State v. Indio Cattle Co.*, 154 S.W.2d 308, 314(Tex.Civ.App.-San Antonio 1941, writ ref'd w.o.m.) (general indefinite evidence raised no fact issue as against specific, definite evidence).

testified that as a Field/Patrol Supervisor he had the discretion to respond to the emergency call of domestic violence, although not technically dispatched. Also, the Webb County Sheriff's Departmental Policies allow a Field/Patrol Supervisor to respond to emergency calls without being dispatched. Rule 7 of the Webb County Departmental Policies provides:

> **Supervisor may respond to emergency and calls without instruction from dispatch.**

(CR 132). Moreover, Corporal Yzaguirre testified as a Patrol/Field Supervisor, he is obligated to dispatch himself to a call. (2RR/40). Justice Barnard's conclusion that Adriana Perez raised a fact issue because Corporal Yzaguirre was not formally dispatched via the radio does not honor the governing standard of review because Corporal Yzaguirre had the authority as a Supervisor to dispatch himself and contradicts Texas Supreme Court law regarding the construction of the term *"emergency"*. Recognizing that the Texas Tort Claims Act does not define *"emergency,"* the Texas Supreme Court has advised that "we cannot construe §101.055(2) to exclude emergencies the Legislature might have intended to include" (citing *Hartman*, 201 S.W. 3d at 673; *See Tooke v. City of Mexia*, 197 S.W. 3d 325, 333(Tex. 2006)(waiver of immunity must be clear and unambiguous); *Wichita Falls State Hospital v. Taylor*, 106 S.W. 3d 692, 697(Tex. 2003)(ambiguity must be resolved in favor of retaining immunity). Thus, the term "emergency" has been construed ***broadly*** (emphasis added). *See e.g., Hartman*, 201 S.W. 3d at 672. The Texas Supreme Court, in its wisdom and based on sound policy considerations, guides us as to why the court has a duty to interpret emergency broadly: "The Legislature has determined that the public good will be better served by encouraging public employees to take immediate action in emergency situations, rather than by suing them later if their actions were imprudent. *Hartman*, 201 S.W. 3d at 673. Since the statute allows an emergency vehicle operator to proceed through a red light after slowing as necessary and imposes the duty of civilian drivers to yield to

11

emergency vehicle operators, The Texas Supreme Court has recognized that policy considerations govern the heavier burden imposed on civilian drivers.[3]

### III. Corporal Yzaguirre's Response to the Emergency Complied with State Statute & Departmental Policy Thereby Conclusively Establishing Emergency Exception to Waiver of Immunity.

The emergency equipment used by Corporal Yzaguirre to alert other motorists before he entered the intersection on a red light and his conduct, conclusively established compliance with state law and showed that he was not consciously indifferent. In other words, Adriana Perez failed to show that Corporal Yzaguirre did not care about the safety of others as he entered the intersection. Justice Barnard erroneously concludes that because its unclear whether Corporal Yzaguirre was on a code 2 or code 3, which particular code in the Departmental Policy indicates an emergency and the fact that Corporal Yzaguirre was not using his wailing siren when he initiated his emergency response, raised a material fact issue in whether he was responding to an emergency. *See App. C*, pg. 7.

These factors are irrelevant because, regardless of the particular code Corporal Yzaguirre chose during his response, the fact remains Corporal Yzaguirre was using audible and visual signals before and at the time of collision. Corporal Yzaguirre's response to the emergency was in compliance with the applicable section of the Texas Transportation Code. This is the critical factor to consider in determining whether Corporal Yzaguirre's response falls within the emergency exception.

It is undisputed that the Webb County Departmental Policies gave Corporal Yzaguirre, as

---

[3]The Texas Supreme Court explained:
"First, emergency vehicle operators typically face more exigent circumstances than civilian drivers. Emergency vehicle operators are charged with protecting the public's health, safety and property and a few minutes or even a few seconds can make the difference between life and death. Second, civilian drivers generally have an advantage when it comes to anticipating and preventing a collision. Under most circumstances, the lights, sirens and distinctive coloring of an emergency vehicle make it stand out from the others; by contrast, the vehicle with which the emergency vehicle is on course to collide too easily blends in with other traffic...Third, emergency vehicle operators must routinely make risky judgment calls in emergency situations. It is unfortunate that some civilian drivers are less than vigilant in abiding by their duties to keep a lookout for and to yield to emergency vehicles, but emergency vehicle operators are entitled to presume that other drivers will respect emergency priorities." *City of Amarillo v. Martin*, 972 S.W. 2d 426, 431-432(Tex. 1998)."

12

a Patrol/Field Supervisor, discretion on which emergency equipment to use. It is also uncontroverted that no Webb County Sheriff's Departmental Policy specifically addressed how a deputy should proceed when entering an intersection on a red light (other than to follow the applicable section of the Texas Transportation Code). 2RR/42.

Nowhere does Adriana Perez identify in the Departmental Policy where the Webb County Sheriff's Department removes the discretion the Webb County Policy granted to the deputy. The relevant provisions of the Webb County Sheriff's Departmental Policies are as follows:

**A. 6.04 Vehicular Warning Devices**
**Field Supervisors or communications personnel shall authorize officers regarding the response mode to be used when responding…These supervisors and commanders shall also have accountability for altering (upgrade or downgrade) assigned response modes. A field officer may choose to initiate crisis or rapidly developing event unknown to communications personnel…Emergency lights, and/or sirens and other emergency signal devices shall be activated as required by law during an emergency response. The headlights of the emergency vehicle, when responding in the emergency mode shall be activated as required by law. CR 148.**
**B. Non-Emergency Calls**
> **Non-Emergency Calls shall be answered CODE 1 and shall receive immediate attention.**
**C. Change in Code Classification**
> **3. Change Code 1 or Code 3, decrease or increase by Supervisor as justified by Supervisor. CR 131.**

Since the Sheriff's Departmental Policy gives discretion to Field/Patrol Supervisors operating an emergency vehicle on how to proceed as long as they comply with the applicable statute, the standard applicable to Corporal Yzaguirre's emergency response is the state statute. *See* Tex. Transp. Code Ann. §546.001-.006. The relevant sections are as follows:

Section 546.001 provides that the driver of an emergency vehicle may proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation;
Section 546.002 provides that section 546.001 applies only when the driver is responding to an emergency call;
Section 546.003 provides that the driver of an emergency vehicle engaging in conduct permitted by Section 546.001 shall use, at the *discretion* of the operator in accordance with

13

policies of the department or the local government that employs the driver, audible *or* visual signals that meet the pertinent requirements of Sections 547.305 and 547.702 (emphasis added) and

Section 546.005 provides that the driver of an emergency vehicle must drive with appropriate regard for the safety of all persons and is not relieved of the consequences of reckless disregard for the safety of others.

In the case at bar, Corporal Yzaguirre was using both audible (his air horn) and visual (his emergency lights) signals, looked both ways and braked as necessary for safe operation before entering the intersection. He was in compliance with the relevant sections of the Texas Transportation Code and his actions in alerting other motorists when entering the intersection defeats, as a matter of law, Adriana Perez' claim that Corporal Yzaguirre did not care about the safety of others.

In sum, because the officer has discretion, the applicability of the emergency exception is not based on the particular code used by the officer, whether he was dispatched or whether the call is defined as an emergency in the departmental policy, but rather it is based on the information and circumstances the officer is reacting to and whether he complied with Tex. Transp. Code Ann. §546.001-.006 in responded to the emergency. Finally, Adriana Perez never presented controverting evidence that the emergency Corporal Yzaguirre was reacting to was downgraded to a non-emergency.

## CONCLUSION

The Lead Opinion and Concurring Opinion contain internal inconsistencies, contradict prior Texas Supreme Court law and the law of this Court and ignores legislative intent. Adriana Perez did not meet her burden to produce sufficient evidence establishing that Corporal Yzaguirre was not responding to an emergency and therefore this Court did not honor the governing standard of review, thereby requiring a rehearing and en banc review. Webb County respectfully requests that this Court grant its motion for rehearing and motion for en banc review

14

of this case, rescind the Panel's Lead and Concurring Opinion, honor the Dissenting Opinion, and affirm the judgment of the trial court, granting the Plea to the Jurisdiction in favor of Webb County.

Respectfully submitted,

MARCO A. MONTEMAYOR
WEBB COUNTY ATTORNEY

BY: */s/ Molly Higgins Santos*
    **MOLLY HIGGINS SANTOS**
    Assistant County Attorney
    State Bar No. 09599100
    1110 Washington St., Suite 301
    Laredo, Texas 78040
    Email: mhiggins@webbcountytx.gov
    Telephone: (956) 523-4044
    Facsimile: (956) 523-5005

    **ATTORNEYS FOR DEFENDANT,**
    **WEBB COUNTY**

## CERTIFICATE OF COMPLIANCE

The attorney signing this motion certifies that this document contains 4,824 words, as indicated by the word count of the computer program used to prepare the motion, and complies with the applicable word limit set forth in Texas Rule of Appellate Procedure 9.4(e) and (i).

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of July, 2015, I electronically filed the foregoing Appellee's Motion for Rehearing and Motion En Banc Consideration with the Clerk of the Court using the E-file system to the following:

John Blaise Gsanger
THE EDWARDS LAW FIRM
Frost Bank Plaza, Ste. 1400 (78470)
P. O. Drawer 480
Corpus Christi, Texas 78403

R. Blake Brunkenhoefer
BRUNKENHOEFER | TURMAN, PLLC
500 N. Shoreline Blvd., Suite 1100
Corpus, Christi, Texas 78401-0354
Email: bbrunk@gulfattorneys.com

*/s/ Molly Higgins Santos*
MOLLY HIGGINS SANTOS
Assistant Webb County Attorney

15